<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC S. WEISS,<br><br>     Plaintiff,<br><br>  v.<br><br>DEBORAH POSNER, *et al.*,<br><br>     Defendants. | Civil Action No. 24-9659 (GC) (JTQ)<br><br>**OPINION** |

<u>**CASTNER, District Judge**</u>

  **THIS MATTER** comes before the Court upon seven Motions to Dismiss (ECF Nos. 45, 47, 48, 49, 51, 52, 61) Plaintiff Eric Weiss's Amended Complaint (ECF No. 35.)  Plaintiff opposed (ECF Nos. 54, 55, 56, 57, 58, 59, 60[1], 83), and Moving Defendants replied. (ECF Nos. 64, 65, 66, 68, 69, 72, 84.)  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motions to Dismiss are **GRANTED** in part and **DENIED** in part.

**I.  <u>BACKGROUND</u>[2]**

  Displeased with the results of numerous state family court proceedings, Plaintiff brings suit against various entities and individuals: Deborah Posner (D. Posner); Shirley Posner (S. Posner);

---

[1]  Plaintiff submitted two identical opposition briefs in response to the Motion to Dismiss filed by Defendants Tracey Bauer, Bert Posner, and Shirley Posner.  (*Compare* ECF No. 54 *with* ECF No. 60).

[2]  On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

Bert Posner (B. Posner); Tracey Bauer (collectively, the Family Defendants); Bernardsville Board of Education, Dr. Gretchen Dempsey, Dr. Scott Neigel, and Anna Sosley (collectively, the Bernardsville Defendants); Bedminster Board of Education and Krista Deckhut[3] (collectively, the Bedminster Defendants); the State of New Jersey,[4] Attorney General Matthew J. Platkin[5] Honorable Stuart Rabner, C.J., Honorable Theresa Mullen, formerly J.S.C., Honorable Thomas Walsh, J.S.C. (now Ret.), Honorable Christine M. Vanek, J.A.D., Honorable Ronald Susswein, J.A.D., and Honorable Heidi Willis Currier, P.J.A.D. (collectively, the Judicial Defendants); Frank LaRocca, Ronald Carlin,[6] and Rotem Peretz[7] (collectively, the Attorney Defendants); Dr. Andrew Katz, Dr. Susan Barasch, Dr. Bonita Guillard, and Watchung Pediatrics (collectively, the Pediatrician Defendants).  (*See generally* ECF No. 35 at 11-12.)[8]

Plaintiff asserts a myriad of claims, including violations of the First, Ninth, Fifth and Fourteenth Amendments; claims under 42 U.S.C. §§ 1983 and 1985; violations under 18 U.S.C. § 1961-1968; state causes of action for fraud, civil conspiracy to commit fraud, aiding and abetting,

---

[3]     Krista Deckhut was improperly plead as Kristen Deckert.

[4]     In light of Plaintiff's pro se status, the Court will construe Plaintiff's Amended Complaint as asserting a claim against the State of New Jersey.  Count 22 of Plaintiff's Amended Complaint (incorrectly pled as Count 20) and Count 24 (incorrectly pled as Count 22) are pled against "the State." (*See id.* at 50, 52.) S*ee Jacques v. Mae*, Civ. No. 22-2806, 2023 WL 6164576, at *2 (D.N.J. Mar. 2, 2023) ("The Court will be forgiving of complaints filed pro se and construe their allegations liberally." (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972))).

[5]     The Court notes that Matthew Platkin is the now-former Attorney General of the State of New Jersey.

[6]     Ronald Carlin was improperly pled as Ron Carlin.

[7]     Rotem Peretz was improperly plead as Rotem Perez.

[8]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

breach of contract, breach of fiduciary duty, fraud in the inducement, malpractice, tortious interference with contract, tortious interference with contractual relations, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, slander, libel, malicious prosecution, abuse of process, invasion of privacy, retaliation; violations under New Jersey's Civil Rights Act; violations of the American with Disabilities Act of 1990, 42 U.S.C. § 12100 *et seq.*; violations of New Jersey's Law Against Discrimination, N.J. Stat. Ann. 10:5-1 *et seq.*; and custodial interference. (*See generally* ECF No. 35 at 26-58.)

Plaintiff and Defendant D. Posner are divorced former spouses who share two children together: a twenty-year-old son and an eighteen-year-old daughter.[9] (*Id.* ¶¶ 15-17.) In the nearly two decades following the parties' divorce in 2009, Plaintiff has filed approximately sixty-five Post-Judgment Motions and Orders to Show Cause in New Jersey State Family Court, with certain filings exceeding hundreds of pages.[10] This contentious and overwhelming post-judgment record has managed to cycle through all three levels of the New Jersey state court

---

[9]   Plaintiff and D. Posner's son and daughter are now approximately twenty-two and twenty years old, respectively.

[10]   Order, *Weiss v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Oct. 7, 2022) ("Defendant's [Eric   Weiss's]   motion   of   over   800   pages   filed   with   the Court requests that this Court vacate its two most recent Orders in this matter." (*See* ECF No. 52-1 at 6)). Plaintiff and several Defendants have attached orders and opinions from the state court family action as exhibits to their filings, and the Court takes judicial notice of same. *See Maher v. Baumeister & Samuels, P.C.*, Civ. No. 22-02054, 2022 WL 13008362, at *8 n.8 (D.N.J. Oct. 21, 2022) ("The Court may take judicial notice of matters of public record at the motion to dismiss stage, including judicial proceedings, opinions, and orders."); *but see S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

3

system.[11] Unsatisfied still, Plaintiff has instituted this action both at the district court and appellate levels.[12]

A majority of Plaintiff's Amended Complaint consists of a chronological timeline of the state court family action which forms the basis of Plaintiff's claims before this Court.

**A. New Jersey State Court Family Action**

Plaintiff and D. Posner were married on September 9, 2005, and share two children: a son born in 2004 and a daughter born in 2005. Order, *Weiss v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Oct. 7, 2022); (*see also* ECF No. 52-1 at 6.) Plaintiff and D. Posner entered into a Final Judgment of Divorce on April 1, 2009. (ECF No. 52-1 at 6.) Following their divorce, Plaintiff alleges in his Amended Complaint that he and D. Posner entered into a custody agreement on March 17, 2011.[13] (ECF No. 35 ¶ 18.) On October 22, 2018, Plaintiff alleges that his daughter told a Bedminster school counselor that she had suicidal thoughts and was at risk of harming herself, a conclusion Plaintiff maintains was inconsistent with an evaluation performed on the

---

[11]  The following list is non-exhaustive and is provided for illustrative purposes: *Weiss v. Weiss*, No. A-1470-09T2, 2010 WL 4740083 (N.J. Super. Ct. App. Div. Nov. 24, 2010) (ECF No. 54 at 77-82); *Weiss v. Weiss*, No. A-0680-10T2, 2012 WL 410847 (N.J. Super. Ct. App. Div. Feb. 10, 2012); (ECF No. 54 at 84-86); *Weiss v. Weiss*, No. A-5160-12T3, 2015 WL 279345 (N.J. Super. Ct. App. Div Jan. 23, 2015), *cert. denied*, 222 N.J. 15 (2015); *Posner v. Weiss*, No. A-0737-14T3, 2017 WL 6546979 (N.J. Super. Ct. App. Div. Dec. 21, 2017) (ECF No. 54 at 88-98); *Posner v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Oct. 30, 2018) (ECF No. 54 at 67-68; *see also* ECF No. 54 at 170-243 (Hr'g Tr.)); *Posner v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. June 28, 2019) (ECF No. 54 at 70-71); *Posner v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Aug. 15, 2019) (ECF No. 54 at 269-70); *Posner v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Aug. 23, 2019) (ECF No. 54 at 73); *Weiss v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Oct. 7, 2022) (ECF No. 52-1 at 4-11); *Posner v. Weiss*, No. A-0955-22, 2024 WL 2827952 (N.J. Super. Ct. App. Div. June 4, 2024), *cert. denied* 262 N.J. 43 (2025) (ECF No. 54 at 100-142).

[12]  *See generally Weiss v. Posner, et al.*, Civ. No. 24-09659 (D.N.J. 2024), *appeal docketed*, Civ. No. 25-2817 (3d Cir. Sept. 16, 2025).

[13]  Plaintiff does not attach a copy of this custody agreement.

same day by an expert therapist from a facility identified simply as "Bridgeway." (*See generally id.* at 7, ¶¶ 19-20, 22, 27-28.)  On this same day, Plaintiff further alleges that Defendants "manufactured a 'net opinion'" from the Pediatrician Defendants to "cover up" the findings of the expert therapist from Bridgeway. (*Id.* ¶ 29.)

Plaintiff alleges that he lost custody of his children after Defendants filed an Order to Show Cause on October 23, 2018 in a New Jersey state court family action. (*See generally id.* at 2, ¶¶ 3, 19, 30.)  Plaintiff asserts that the Order to Show Cause was based on a false statement D. Posner made to the family court; namely, that the parties' daughter was suicidal following Plaintiff's parenting time that weekend. (*Id.* ¶ 19.)  On October 30, 2018, Plaintiff alleges that Judge Mullen temporarily suspended his visitation and contact with his children. (*Id.* ¶ 32; *see also* ECF No. 55 at 57-58.)  According to Plaintiff, he filed an Order to Show Cause in November 2018 asking the family court to immediately restore his custody. (ECF No. 35 ¶ 36.)

On November 7, 2018, Plaintiff states that Judge Mullen appointed an expert from a facility named "Resolve" to make recommendations on contact and parenting time and ordering the parties to follow the recommendations. (*Id.* ¶ 39.)  Following this appointment, Plaintiff asserts that the New Jersey Division of Child Protection and Permanency (DCPP) concluded that Defendants' allegations of abuse against Plaintiff were "unfounded." (*Id.* ¶ 40.)  He also claims that the Court-appointed expert from Resolve confirmed that Defendants were alienating the children and that they needed therapy, a conclusion consistent with subsequent reports issued by Resolve from January to April 2019. (*Id.* ¶¶ 41-42.)  Plaintiff alleges that contrary to Resolve's findings, Judge Mullen refused to restore contact with his children, and that he was denied the opportunity to obtain copies of certain reports and transcripts, despite same being provided to Defendants. (*Id.*)  Plaintiff further alleges that on April 3, 2019, Judge Mullen conducted a child interview but failed

5

to provide him with a recording or transcript in violation of New Jersey Court Rule 5:8-6.  (*Id.* ¶ 46.)

On June 28, 2019, Plaintiff asserts that D. Posner sought a modification of child support, an act he alleges was done "illegally."  (*Id.* ¶ 49; *see also* ECF No. 54 at 70-71.)  According to Plaintiff, Judge Mullen granted D. Posner's motion as "a non-judicial retaliatory act," against him "for daring to exercise his constitutional rights to challenge[] the [c]ourt['s] findings and to seek restoration of his parenting time." (ECF No. 35 ¶¶ 49-51.)  Plaintiff also asserts that, in the absence of a hearing, Judge Mullen terminated reunification therapy and ordered an unwilling expert to perform a risk assessment of Plaintiff.  (*Id.* ¶ 52.)  He also alleges that Judge Mullen suspended his right to file any motions until the expert completed the evaluation.  (*Id.* ¶ 53.)  Plaintiff states that on September 25, 2019,[14] Judge Mullen issued an order, without a hearing, calculating his responsibility for child support.  (*Id.* ¶ 58.)

Plaintiff then filed a series of appeals, although it is unclear from his Amended Complaint exactly which orders or legal issues he sought appellate review of, as his Amended Complaint is devoid of any attachments or exhibits.  (*See generally id.* ¶¶ 54, 57, 59-60.)  However, Plaintiff alleges that one of his appeals was deemed interlocutory, which he asserts was "[a] complete denial of due process."  (*Id.* ¶ 60.)  Following extensive appellate motion practice, on May 25, 2021, Plaintiff asserts that he provided the court with a report which concluded that he was "within a medical degree of certainty mentally fit to parent." (*Id.* ¶ 61.)  Despite this report, Plaintiff alleges

---

[14]    Considering the allegations in Plaintiff's Amended Complaint, which are organized in chronological order, the Court presumes that the year Plaintiff omitted for this referenced order is 2019, as such date chronologically follows in his recitation of the facts in his Amended Complaint. Plaintiff also later refers to a September 25, 2019 order.  (*See generally id.* ¶ 62.)

6

that Judge Mullen refused to vacate the October 30, 2018 order, reinstate contact, or order reunification therapy. (*Id.*)

Plaintiff's Amended Complaint identifies several additional motions that he filed between October 28, 2021 and September 2022. (*See generally id.* ¶¶ 64-72.) During this period, Plaintiff sought various forms of relief, including but not limited to: vacating Judge Mullen's October 30, 2018 order suspending his visitation and contact with his children and the September 25, 2019 order modifying his child support obligation (*id.* ¶ 62); the enforcement of an expert's recommendation regarding reunification therapy (*id.* ¶¶ 65-66); a request seeking oral argument, copies of transcripts, and expert reports (*id.* ¶ 68); and an Order to Show Cause asking that the court reconsider a prior ruling, which was later refiled as a regular motion on September 13, 2022. (*Id.* ¶¶ 70-71); *see also* Order, *Weiss v. Weiss*, No. FM-20-803-08 (N.J. Super. Ct. Oct. 7, 2022).

Notably, Plaintiff's September 13, 2022 motion sought, among other relief, an order disqualifying D. Posner's attorney Ronald Carlin. (*See* ECF No. 52-1.) According to the court's order, Plaintiff claimed that many years ago he consulted with Ronald Carlin, an argument that Mr. Carlin "vehemently denied" and had "been heard and denied by the court numerous times." *Id.* The court further noted that Plaintiff's filing of "sixty-five applications seeking the same or similar relief time and time again based on the exact same reasoning is nothing short of harassment towards the opposing party [D. Posner.]," a fact the court found "particularly true when Mr. Weiss, who is self-represented, well knows that Ms. Posner is represented and he is forcing her to incur legal fees, with no reasonable expectation that he will get a different result." *Id.*

Plaintiff asserts that most of the subsequent orders entered by the court violated New Jersey Court Rule 1:7-4(a), as he alleges that his motions were denied "without explanation" or without any "reason[,] facts[,] or law." (*See generally* ECF No. 35 ¶¶ 68-70, 72.) Plaintiff alleges that

7

Judge Walsh, who presided over several of these motions, "ignored the Appellate Court directive that required him to comply with his Judicial duties, enforce agreements as written and review the facts and explain his rulings on motions to reconsider." (*Id.* ¶ 70.)  Plaintiff asserts that such violations are denials of due process. (*Id.* ¶¶ 68-70, 72.)

Finally, on June 4, 2024, Plaintiff asserts that one of his appeals was denied by the Appellate Division. (*Id.* ¶ 73; *see also* ECF No. 54 at 100-142); *Posner v. Weiss*, No. A-0955-22, 2024 WL 2827952, at *1 (N.J. Super. Ct. App. Div. June 4, 2024).  Plaintiff alleges that "the Appellate Court Judges . . . [a]cting as advocates and not judges" "fabricate[d] evidence and applied improper laws to deny [Plaintiff] his constitutional parental rights, rights of due process, and his right to have a fair and impartial judiciary decide his case." (ECF No. 35 ¶ 73.)

## B. Federal Court Proceedings

On October 7, 2024, Plaintiff filed his Complaint in this action. (*See* ECF No. 1.)  The Bedminster, State, and Pediatrician Defendants filed separate Motions to Dismiss, which were denied as moot following the filing of Plaintiff's Amended Complaint on February 5, 2025. (*See generally* ECF Nos. 10, 20, 30, 35-36.)  On June 29, 2025, Plaintiff filed a "Motion to Vacate Unconstitutional Orders" (ECF No. 85) and filed a supplemental letter on August 19, 2025 (ECF No. 98) requesting that his motion be considered "with utmost urgency."  Plaintiff's Motion sought to vacate the "October 30, 2018 and subsequent orders suspending Plaintiff's parenting time," the "June 28, 2019 and September 25, 2019 orders modifying child support," and other related relief. *Weiss v. Posner*, Civ. No. 24-09659, 2025 WL 2433271, at *1 (D.N.J. Aug. 22, 2025); (*see also* ECF No. 100.).  Plaintiff also filed a Motion to Strike the Judicial Defendants' brief in opposition to the Motion to Vacate (ECF No. 93), which was denied. *Weiss*, 2025 WL 2433271 at *1 n.1.

8

On August 22, 2025, this Court denied Plaintiff's Motion finding that the *Rooker-Feldman*[15] doctrine barred Plaintiff's claims to the extent he sought to vacate state child support orders. *Id.* at *2. The Court further found that "to the extent Plaintiff's child support proceedings are ongoing and thus not barred under *Rooker-Feldman*, they are nevertheless barred under the *Younger*[16] abstention doctrine," which prevents federal courts from enjoining pending state proceedings absent extraordinary circumstances. *Id.* at *3. Finally, the Court denied Plaintiff's claims for injunctive relief. *Id.*

Subsequently, on September 3, 2025, Plaintiff filed a Motion for a Temporary Restraining Order seeking reconsideration of this Court's August 22, 2025 Order. (*See* ECF No. 101.) On September 10, 2025, this Court denied Plaintiff's Motion, finding no basis upon which it should reconsider its prior decision or grant the requested relief. (ECF No. 102.) Plaintiff then filed a Notice of Appeal with the Third Circuit regarding this Court's August 22, 2025 denial of his Motion to Vacate and Motion to Strike. (ECF No. 103; *see also* Case No. 25-2817.)

On October 24, 2025, Plaintiff filed a "Motion for Reconsideration and Appeal to Vacate Void State Court Orders" before this Court. (ECF No. 106.) In an Order dated January 5, 2026, this Court held that Plaintiff's Motion "appear[ed] to be directed to the Third Circuit where his appeal is pending, rather than to this Court." (ECF No. 111.) This Court denied Plaintiff's Motion as moot, as Plaintiff refiled his Motion with the Third Circuit. (*Id.*) Plaintiff's appeals remain pending.

---

[15]   *See generally Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[16]   *Younger v. Harris*, 401 U.S. 37 (1971).

9

Plaintiff filed his Amended Complaint on February 5, 2025.  (ECF No. 35.)  In Plaintiff's Amended Complaint, he pleads a total of twenty-nine counts.  Plaintiff's first count consists of federal claims brought pursuant to § 1983 for 1) violating Plaintiff's constitutional rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution; 2) violating the "due process clause;" and 3) conspiring to violate the due process clause under color of law pursuant to § 1983 against all Defendants (Count One) (*id.* ¶¶ 75-117).[17]  Count One also consists of a claim for conspiracy under § 1985.  (*Id.*)  Count Two is also brought pursuant to § 1983 and alleges a violation of the Fifth Amendment Due Process Clause's guarantee of a right to an unbiased judge and  judicial  system.     (*Id.*  ¶¶  118-126.)[18]     Count  Three,  titled  by  Plaintiff  as  "a Violation of Plt's [Plaintiff's] Parental Rights that are Protected by the U[.]S[.] Constitution," alleges a violation of his parental rights against all Defendants.  (*Id.* ¶¶ 127-131.)  Count Four is brought pursuant to 18 U.S.C. § 1961-1968 for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants.  (*Id.* ¶¶ 132-34, *see also id.* at 13-18.) Plaintiff's fifth and final federal claim appears in Count Twenty-Six (incorrectly pled as Count Twenty-Four) for violations of the ADA, alleging discrimination on the basis of a disability.  (*Id.* ¶¶ 308-14.)[19]  Plaintiff's remaining counts consist of various state law claims.  (*See id.* ¶¶ 135-323.)

---

[17]     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

[18]     Count Two fails to identify which Defendant(s) Plaintiff pleads this claim against, but the allegations contained therein mention Judges Mullen and Walsh specifically.  (ECF No. 35 ¶¶ 122-24.)

[19]     As with Count Two, Plaintiff again fails to identify which Defendant(s) Plaintiff pleads this claim against, but the allegations contained therein mention Judges Mullen and Walsh specifically.  (*Id.* ¶¶ 309-10.)

Plaintiff seeks damages in the form of actual, compensatory, and punitive damages, as well as reasonable attorneys' fees and costs. (*Id.* at 59.) Plaintiff further seeks a declaratory judgment in accordance with the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring as a matter of law that: 1) "DEFs' [Defendants'] policy, practice, and custom of refusing and failing to provide PLT [Plaintiff] a hearing[] before modifying, [or] terminating parental rights violated the Due Process Clause and are vacated," 2) "DEFs' [Defendants] violated PLT [Plaintiff's] 5th amendment right to a fair and impartial tribunal," and 3) DEF [Defendant] violated PLT [Plaintiff's] due process rights refusing PLT [Plaintiff] to have transcripts, expert reports, participate in child interviews, terminating his access to the [c]ourts and that parents in a custody dispute have a First and Fourteenth Amendment [r]ight to collect evidence and document their interaction with their children." (*Id.*) Finally, Plaintiff seeks injunctive relief pursuant to Rule 65 "enjoining the DEFs [Defendants] and all persons in concert with them, and their successors in office, are ordered to vacate and from enforcing the termination of PLT [Plaintiff's] parental rights, the modification of child support, and all orders that flowed from the termination of PLT [Plaintiff's] parental rights from 2018." (*Id.*)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds. *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, Civ. No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc.*, 220 F.3d at 178). "Further, when addressing subject matter

jurisdiction, the court looks only at the allegations in the pleadings and does so in the light most favorable to the non-moving party." *Altun v. Mayorkas*, Civ. No. 23-3944, 2024 WL 4882578, at *2 (D.N.J. Nov. 25, 2024) (citing *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

Motions to dismiss for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine are properly brought pursuant to Rule 12(b)(1). *Mo v. JPMorgan Chase Bank, N.A.*, Civ. No. 20-14387, 2021 WL 1608895, at *2 (D.N.J. Apr. 26, 2021) (citing *Gage v. Warren Twp. Comm. & Planning Bd. Members*, 463 F. App'x 68, 71 (3d Cir. 2012) (per curiam)). "Pursuant to 28 U.S.C. § 1257, the *Rooker-Feldman* doctrine recognizes that only the United States Supreme Court, not lower federal courts, possesses proper subject matter jurisdiction to review state court decisions." *Schatten v. Weichert*, Civ. No. 09-1156, 2009 WL 10697224, at *2 (D.N.J. Nov. 16, 2009), *aff'd sub nom. Schatten v. Weichert Realtors, Inc.*, 406 F. App'x 589 (3d Cir. 2010) (citations omitted).

## B. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "'A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab.*

13

*Litig. (No. II)*, 974 F.3d 228, 231-32 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

Although courts construe *pro se* pleadings less stringently than formal pleadings drafted by attorneys, *pro se* litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "Courts are to construe complaints so as to do substantial justice, . . . keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (internal quotation omitted) (citing Fed. R. Civ. P. 8(f) (abrogated on unrelated grounds)). Importantly, when leave to amend would be futile, courts will dismiss a *pro se* plaintiff's complaint with prejudice. *See Mickell v. Geroulo*, 794 F. App'x 223, 226 (3d Cir. 2019); *see also Rhett v. New Jersey Superior Court*, 260 F. App'x 513, 515-16 (3d Cir. 2008) (finding that a pro se plaintiff's "rambling pleadings contain[ing] mostly unintelligible allegations" warranted dismissal with prejudice).

## III.  DISCUSSION

The Court will begin by addressing Plaintiff's federal claims.

### A.  Counts One and Three

Plaintiff asserts § 1983 claims based on violations of the due process clause, the First, Ninth,[20] and Fourteenth Amendments (Count One) (*see* ECF No. 35 ¶¶ 75-117) and violations of his "parental rights" (Count Three) (*see id.* ¶¶ 127-131) as against all Defendants. Plaintiff also

---

[20]    In analyzing Count One of Plaintiff's Amended Complaint, the Court will decline to consider any alleged violation of Plaintiff's Ninth Amendment rights, as Plaintiff cannot maintain a Ninth Amendment claim. The Ninth Amendment "'does not independently provide a source of individual constitutional rights.'" *See Krasil v. Betze*, Civ. No. 22-6914, 2023 WL 3689558, at *7 (D.N.J. May 26, 2023) (quoting *Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009)).

14

asserts claims for conspiracy to violate due process under color of law pursuant to § 1983, and conspiracy under § 1985 (also pled as Count One) (*see* ECF No. 35 ¶¶ 75-117).[21]

At the outset, the Court gleans from Plaintiff's Amended Complaint that the constitutional right Plaintiff asserts in Count Three, "the fundamental right of parents to direct the care, upbringing, and education of their children," (*id.* ¶ 128) is a Fourteenth Amendment right. "'[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 170 (3d Cir. 2016), *as amended* (Mar. 21, 2016) (quoting *Troxel v. Granville*, 530 U.S. 57, 66, (2000)). As a result, the Court will consider Count Three, Plaintiff's freestanding "parental rights" claim, together with Count One, his §1983 claim. *See Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) ("Inasmuch as § 1983 affords a remedy for infringement of one's constitutional rights, identical claims raised under the Fourteenth Amendment are redundant, rendering the outcome of the § 1983 claims dispositive of the independent constitutional claims.").

### 1. Eleventh Amendment Sovereign Immunity

The State of New Jersey, Defendant Platkin, and the Judicial Defendants argue that Plaintiff's §§1983 and 1985 claims against them should be dismissed under principles of sovereign immunity. (*See* ECF No. 48-1 at 16-19.) The Court agrees.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects

---

[21] Plaintiff's Amended Complaint specifically cites to subsection (3) of 42 U.S.C. § 1985. (*See* ECF No. 35 at 13.) Accordingly, the Court evaluates Plaintiff's § 1985 claim as a claim brought pursuant to § 1985(3).

of any foreign state." U.S. Const. amend. XI. "The Eleventh Amendment 'immunize[s] an unconsenting state from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Munchinski v. Solomon*, 618 F. App'x 150, 156 (3d Cir. 2015) (quoting *Fitchik v. N.J. Transit Rail Ops., Inc.,* 873 F.2d 655, 658-59 (3d Cir.1989). Moreover, "the Amendment afford[s] states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought." *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, Civ. No. 19-21389, 2020 WL 7237947, at *7 (D.N.J. Dec. 9, 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)).

Critical here, the Eleventh Amendment protects not only states, but also state agencies and state officials acting in their official capacities, "as long as the state is the real party in interest." *Fitchik*, 873 F.2d at 659; *see Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) ("A suit against the States, their agencies, and their employees acting in an official capacity is also barred, because it is merely another way of pleading an action against the state."); *Hyatt*, 340 F. App'x 833, 836 (3d Cir. 2009) ("Eleventh Amendment immunity applies to state entities and officials if the state is the real, substantial party in interest.") (internal quotations omitted). "The party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

For purposes of the Eleventh Amendment, the state judiciary and the Attorney General's Office are arms of the state. *See Mazzetti v. New Jersey Div. of Child Prot. & Permanency*, Civ. No. 14-8134, 2017 WL 1159726, at *9 n.11 (D.N.J. Mar. 27, 2017) ("Members of the New Jersey state judiciary stand in the shoes of the state and are entitled to the same Eleventh Amendment protection against official-capacity claims." (citing *Robinson v. N.J. Mercer Cnty. Vicinage-*

*Family Div.*, 514 Fed. Appx. 146, 149 (3d Cir. 2013))); *see also Dongon v. Banar*, 363 Fed. App'x. 153, 156 (3d Cir. 2010) ("[S]tate courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state."); *Gencarelli v. Superior Ct. of N.J.*, Civ. No. 04-3332, 2005 WL 1490590, at *3 (D.N.J. June 21, 2005) ("It is settled law in New Jersey that the state judiciary is an integral part of the state and, consequently, all claims against it are barred by the Eleventh Amendment." (internal quotations omitted) (citing *Hunter v. Supreme Ct. of N.J.*, 951 F. Supp. 1161, 1177 (D.N.J. 1996), *aff'd sub nom.*, *Hunter v. Sup. Ct. of N.J.*, 118 F.3d 1575 (3d Cir. 1997))); *see also El v. Atl. City Freeholders Bd. of Commissioners*, Civ. No. 22-6281, 2023 WL 8271768, at *7 (D.N.J. Nov. 30, 2023) ("[T]he Attorney General of New Jersey enjoys sovereign immunity in his official capacity, and the Office of the Attorney General is an arm of the state, entitled to Eleventh Amendment immunity.").

Thus, Plaintiff's §§ 1983 and 1985 claims against the State of New Jersey, Defendant Platkin, and the Judicial Defendants, in their official capacities, are dismissed based on sovereign immunity. And there is no indication that the State itself consents to suit, or that Congress authorized a claim against the State. *See Zimmer v. New Jersey Div. of Child Prot. & Permanency*, Civ. No. 15-2524, 2016 WL 234844, at *7 (D.N.J. Jan. 20, 2016), *aff'd*, 741 F. App'x 875 (3d Cir. 2018) ("Congress has not abrogated, and New Jersey has not waived, the state's sovereign immunity with respect to Section 1983 claims or Section 1985 claims.") (collecting cases). For the above stated reasons, Counts One and Three of Plaintiff's Amended Complaint against the State of New Jersey, Defendant Platkin (in his official capacity) and the Judicial Defendants (in their official capacities) are barred by Eleventh Amendment sovereign immunity. The Court

17

dismisses Plaintiffs §§ 1983 and 1985 claims against these Defendants with prejudice, as any further amendment would be futile.

Plaintiff also argues that because he seeks prospective injunctive relief against Defendant Platkin and the Judicial Defendants (in their official capacities), his federal civil rights claims should be allowed to proceed pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). (ECF No. 59 at 33.) The Court disagrees.

The *Ex parte Young* decision provides an exception to Eleventh Amendment immunity where a party seeks declaratory or injunctive relief. *See Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Labor & Indus.*, 985 F.3d 189, 193 (3d Cir. 2021) (emphasis omitted). This exception "requires [the court] to 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'" *Id.* at 193-94 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'm of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff seeks to enjoin Defendants from "enforcing the termination of Plaintiff's parental rights, modification of child support, and all orders that flowed from the termination" of his parental rights from 2018." (ECF No. 35 at 59.) He also seeks a judgment declaring, as a matter of law, 1) "that DEFs' [Defendants'], policy, practice, and custom of refusing and failing to provide PLT [Plaintiff] a hearing[] before modifying, terminating parental rights violated the Due Process Clause and are vacated;" 2) "that DEFs' [Defendants] violated PLT [Plaintiff's] 5th amendment right to a fair and impartial tribunal;" and 3) "that DEF [Defendant] violated PLT [Plaintiff's] due process rights refusing PLT [Plaintiff] to have transcripts, expert reports, participate in child interviews, terminating his access to the Courts and that parents in a custody

18

dispute have a First and Fourteenth Amendment Right to collect evidence and document their interaction with their children." (*Id.* at 59.)

The Court construes Plaintiff's requests for equitable relief as seeking to vacate prior state court orders. The Court, however, lacks jurisdiction to grant Plaintiff the relief he seeks.

### 2. Rooker-Feldman

Under the *Rooker-Feldman* doctrine, a federal court lacks subject matter jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling." *Parness v. Christie*, Civ. No. 15-3505, 2017 WL 6513346, at *6 (D.N.J. Dec. 19, 2017) *subsequently aff'd*, 751 F. App'x 277 (3d Cir. 2018) (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006)). The scope of the *Rooker-Feldman* doctrine is narrow, and applies when "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original).

The *Rooker-Feldman* doctrine applies to both claims which were actually litigated in the state courts and those "inextricably intertwined with an adjudication by a state court." *Parness*, 2017 WL 6513346, at *9 (quoting *Taliaferro*, 458 F.3d at 192). "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, [w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Taliaferro*, 458 F.3d at 192 (quoting *Parkview Assoc. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000)) (alterations in original); *see also Eisenstein v. Ebsworth*, 148 F. App'x 75, 77 (3d Cir. 2005) (affirming dismissal on *Rooker-Feldman* grounds, "which applies to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

19

proceedings commenced and inviting district court review and rejection of those judgments.'") (citations omitted).

In its August 22, 2025 Opinion, this Court has already addressed and denied Plaintiff's Motion to Vacate numerous New Jersey state and appellate court orders (ECF No. 85) and his Temporary Restraining Order, (ECF No. 98), based on the *Rooker-Feldman* doctrine. (ECF No. 100.) The only difference here is that Plaintiff now substitutes the term "Motion to Vacate" with "request for declaratory relief." (*Compare* Plaintiff's Motion to Vacate, ECF No. 85 at 19 (seeking "vacatur" of the "October 30, 2018 and subsequent orders suspending Plaintiff's parenting time . . . [the] June 28, 2019 and September 25, 2019 orders modifying child support," and other related relief), *with* Plaintiff's Amended Complaint, ECF No. 35 (seeking a declaratory judgment from this Court ordering Defendants to vacate "all orders that flowed from the termination of PLT [Plaintiff's] parental rights from 2018.").) All of the equitable relief sought by Plaintiff rises and falls with the prior state court orders and this Court lacks jurisdiction to vacate those orders.

### 3. "Persons" Amenable to Suit

Defendant Platkin as well as the Judicial, Family, Attorney, and Pediatrician Defendants argue that Plaintiff's § 1983 claims must be dismissed against them because they are not amenable to suit and because their conduct does not constitute state action. The Court agrees.

As courts in this district have recognized, § 1983 provides its own bar to bringing actions against states and state actors, *i.e.*, "who or what is a suable 'person' under [§] 1983." *See Kaul Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019) (recognizing that the suable person analysis is a separate analysis from Eleventh Amendment sovereign immunity).

Section 1983 states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

20

> United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The term "persons" in §1983 has the same meaning under § 1985. *See New Jersey Chinese Cmty. Ctr. v. McAleer*, Civ. No. 21-08320, 2022 WL 3403297, at *7 (D.N.J. Aug. 15, 2022) (collecting cases). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Neither are attorneys performing their role as counsel to their client, *see Polk v. Cnty. of Dodson*, 454 U.S. 312, 317-19, 318 n.7 (1981) (a private attorney, even if appointed and paid for by the state, is not acting under color of state law when performing his function as counsel), nor are litigants exercising their rights in court, *see Liu v. Lu*, Civ. No. 23-3819, 2025 WL 3546295, at *5 (D.N.J. Dec. 10, 2025) (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) "'merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'")); *see also Gage v. Twp. of Warren*, Civ. No. 09-519, 2009 WL 1635602, at *3 (D.N.J. June 10, 2009) (quoting *Fueson v. Feldman,* Civ. No. 00-1117, 2001 WL 34355662, at *10 (E.D. Pa. 2001)) "'Filing a lawsuit in state court, is not for 1983 purposes 'state action;' nor does it turn a private citizen into a state actor[.]'")).

Private defendants are also generally not liable for constitutional violations under § 1983. To be liable, a defendant must act "under color of state law," *i.e.*, "exercis[ing] power 'possessed

by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *McKinnie v. Hudson Cnty. Prosecutor Off.*, Civ. No. 13-7290, 2016 WL 6821081, at *3 (D.N.J. Nov. 16, 2016) ("The due process and equal protection clauses, as well as § 1983, are protections against government action, not sources of claims between private parties."); *see also P.R.B.A. Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221 (3d Cir. 2015) (holding that a private entity can only be liable under § 1983 if it is deemed a state actor).

The broad and conclusory allegations in Plaintiff's Amended Complaint against these private individuals demonstrates nothing more than private disputes fully litigated through the state judicial system. His dissatisfaction with D. Posner's decision to exercise her rights as a litigant in state court does not convert her into a state actor, and her choice to file an action in court in no way transforms her conduct into action on behalf of the State. *See Liu*, 2025 WL 3546295, at *5 (quoting *Dennis*, 449 U.S. at 28); *see also Gage*, 2009 WL 1635602, at *3 (quoting *Fueson,* 2001 WL 34355662, at *10). Nor do the Attorney Defendants become state actors simply by representing D. Posner in the underlying state action. *See Polk*, 454 U.S. at 317-19, 318 n.7.

As to the Pediatrician Defendants, Plaintiff's allegations pertain solely to his frustration and disagreement with the content of the medical report they provided upon evaluating Plaintiff's daughter, which was attached to D. Posner's October 2018 Order to Show Cause. (*See* ECF No. 35 at 6, 14-15 alleging that the medical report provided by the Pediatrician Defendants included "conflicting" recommendations and that they were "incorrect in their findings and opinions".) The fact that this report was attached and/or referenced in a court filing does not constitute state or governmental action.

22

Thus, Defendant Platkin (in his official capacity) and the Judicial Defendants (in their official capacities) as well as the Family, Attorney, and Pediatrician Defendants are not "persons" amenable to suit under § 1983.

### 4. Conspiracy Claims

While private defendants are generally not liable for constitutional violations under § 1983, "[a] party that willfully acts in concert with a state official to deprive another of their constitutional right is subject to liability under § 1983," such as when a party "choose[s] to participate in a joint operation with state officials to deprive another of a federally protected right." *Reading v. N. Hanover Twp., New Jersey*, Civ. No. 1:23-CV-1469, 2026 WL 102849, at *16 (D.N.J. Jan. 13, 2026) (citing *Dennis*, 449 U.S. at 27). The Family, Attorney, and Pediatrician Defendants also argue that Plaintiff fails to state a claim for conspiracy pursuant to both §§ 1983 and 1985. The Court agrees.

To state a claim for civil conspiracy under § 1983, a plaintiff must establish the elements of a cause of action under § 1983, as well as the elements of a civil conspiracy. *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 646 (D.N.J. 2011). The elements of a civil conspiracy claim under § 1983 are:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*Smith v. Donio*, Civ. No. 17-269, 2017 WL 1237975, at *4 (D.N.J. Apr. 3, 2017) (citing *Adams v. Teamsters*, 214 Fed. Appx. 167, 172 (3d Cir. 2007)) (citations and quotations omitted). "'[A] conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific

23

facts demonstrating an agreement to commit the alleged improper actions.'" *Smith*, 2017 WL 1237975, at *5 (quoting *Capogrosso*, 588 F.3d at 185).

Not only has Plaintiff failed to allege a § 1983 claim, Plaintiff also fails to allege any unlawful agreement between the Defendants to state a claim for conspiracy under § 1983. Plaintiff broadly labeling all Defendants as "co-conspirators" and titling their purported wrongdoing as "a conspiracy scheme," amounts to nothing more than conclusory allegations inadequate to state a cognizable conspiracy claim. *See Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 547 (D.N.J. 2013), *aff'd sub nom. Est. of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239 (3d Cir. 2016) ("Bare conclusory allegations of 'conspiracy' will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.") (internal citations and quotations omitted). Similarly, Plaintiff's dissatisfaction with the remaining Family Defendants' involvement in the state court family action (*i.e.*, B. Posner, S. Posner, and Tracey Bauer's conduct in allegedly "funding" D. Posner's legal fees or "interfering" with his custody rights) does not transform this conduct into that of a constitutional violation. Further, to the extent Plaintiff's alleged conspiracy is premised on the outcome of the state court family action, (*see* ECF No. 35 at 1 "DEF [Defendant] and Co-conspirators have forever terminated PLT's [Plaintiff's] parental rights and right to have contact with his children without ever having a hearing and intentionally refusing to act in the child's best interest and provide proper medical care,") "'absent specific facts demonstrating an agreement to commit the alleged improper actions,'" Plaintiff cannot state a plausible claim for conspiracy. *Smith*, 2017 WL 1237975, at *5 (quoting *Capogrosso*, 588 F.3d at 185). Accordingly, this Court dismisses Plaintiff's § 1983 conspiracy claim against the Family, Attorney, and Pediatrician Defendants. *See generally Dougherty v. Adams-Dougherty*, Civ. No. 15-8541, 2016 WL 5219460,

24

at *7 (D.N.J. Sept. 21, 2016) (dismissing with prejudice § 1983 allegations that an ex-spouse's family members conspired with courts and police to deprive the plaintiff of his rights in divorce proceedings).

Section 1985 also provides a cause of action against "two or more persons . . . [who] conspire . . . for the purpose of depriving, either directly or indirectly any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]"  42 U.S.C. § 1985(3).  Section 1985(3) is limited in reach and applies only to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). The Third Circuit has extended § 1985(3) to invidious discrimination predicated on discrimination against individuals with "immutable characteristics" such as race, gender, or mental handicap.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)).

To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "'(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.'"  *Liu v. Lu*, 2025 WL 3546295, at *4 (quoting *Lake*, 112 F.3d at 685 (citations omitted). "'Despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others," or to be a 'general federal tort law.'"  *Owens v. Armstrong*, 171 F. Supp. 3d 316, 336 (D.N.J. 2016) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006)). Rather, "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus

against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber*, 440 F.3d at 135.

Plaintiff's § 1985(3) claim fails for the same reason as Plaintiff's § 1983 conspiracy claim; Plaintiff has failed to allege the existence of a conspiracy. *See Harley v. City of New Jersey City*, Civ. No. 16-5135, 2017 WL 2779466, at *11 (D.N.J. June 27, 2017) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002)) "[M]ere conclusory allegations that a conspiracy exists will not survive a motion to dismiss.")). Other courts have similarly dismissed such claims under § 1985(3). *See Liu*, 2025 WL 3546295, at *5 (dismissing a plaintiff's § 1985(3) claim with prejudice finding that allegations that the plaintiff's ex-spouse "colluded" with her attorneys and the judge presiding over her custody case did not constitute a conspiracy to violate plaintiff's parental rights, and amounted to nothing more than the ex-spouse resorting to the court to obtain lawful court orders); *see also Dennis*, 449 U.S. at 28 ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."). Accordingly, the Court dismisses Plaintiff's conspiracy claim under § 1985(3) against the Family, Attorney, and Pediatrician Defendants without prejudice.[22]

---

[22]    The Court also notes that Plaintiff's Amended Complaint fails to provide any factual allegations to suggest that Defendants were motivated by a discriminatory animus to deprive Plaintiff of equal protection of the laws, and his Complaint fails to identify any identifiable class that he is purportedly a part of. *See Lake*, 112 F.3d at 685. Even if this Court were to consider the "classes" Plaintiff identifies for the first time in one of his opposition briefs (*see* ECF No. 54 at 21 (identifying "parents in custody disputes" and "father[s] asserting [their] rights" as potential classes)), district courts that have addressed the issue, including several within the Third Circuit, have held that such "classes" do not form a protected class under § 1985(3). *See Humphrey v. Ct. of Common Pleas of York Cnty., Pa.*, 640 F. Supp. 1239, 1243 (M.D. Pa. 1986) (finding that a class consisted of divorcing or divorced fathers, or fathers engaged in custody disputes did not form a class under § 1985(3)); *Pollack v. Nash*, 58 F. Supp. 2d 294, 305 (S.D.N.Y. 1999) (citing *Humphrey*, 640 F. Supp. at 1243) ("[T]hose in a family custody dispute do not form a protected class under § 1985."); *Fox v. Cnty. of Tulare*, Civ. No. 11-O520, 2014 WL 3687735, at *13 (E.D. Cal. July 24, 2014) ("[T]he classification of single parent of either gender in a custody proceeding is not a member of a protected class."); *Ysais v. Richardson*, Civ. No. 07-287, 2008 WL 2230720,

26

### 5. Individual Capacity Claims

#### a. Supervisory Claims

In addition to being sued in their official capacities, Plaintiff sues Defendants Platkin and Rabner in their individual capacities.  Plaintiff claims that Defendants Platkin and Rabner were "repeatedly inform[ed] and provided evidence but refused to do the ministerial/administrative task of investigating possible violations of the RPC's and the judicial canon of ethics as the law requires." (ECF No. 35 at ¶¶ 301-02.)  Plaintiff also alleges that these Defendants are "presumably officials tasked with administration and enforcing New Jersey law."   The Court construes Plaintiff's Amended Complaint as to these Defendants as an attempt to impose individual liability[23] under a theory of respondeat superior.

Generally, "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Szemple v. Rutgers*, Civ. No. 10-05445, 2016 WL 1228842, at \*5 (D.N.J. Mar. 29, 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Additionally, "[b]ecause vicarious or supervisor liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 675 (internal citations omitted).  The same principles attach to claims brought under § 1985. *See Hernandez v. City of*

---

at \*3 (D.N.M. Mar. 24, 2008) (same); *Webster v. Bronson*, Civ.  No. 07-5661, 2009 WL 3185922, at \*5 (W.D. Wash. Oct. 2, 2009), *aff'd*, 402 F. App'x 280 (9th Cir. 2010) ("Fathers in child custody disputes are not members of a protected class, and thus, cannot be subject to class animus."). In addition to the reasons cited above, the Court finds that the preceding authority further illustrates that amendment of Plaintiff's § 1985(3) claim would be futile.

23      "While state officials sued in their official capacity are also not 'persons' subject to a suit for damages under § 1983, a state official sued in his individual capacity is a 'person' subject to suit under § 1983." *Bonner v. New Jersey*, Civ. No. 10-2684, 2012 WL 254138, at \*2 n.4 (D.N.J. Jan. 27, 2012) (citing *Kentucky v. Graham,* 473 U.S. 159, 167-68 (1985)).

*Paterson*, Civ. No. 22-6763, 2023 WL 6876008, at *6 (D.N.J. Oct. 18, 2023) ("[L]iability under § 1985 cannot be based on respondeat superior."); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[A] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."); *Johnson v. City of Clifton*, Civ. No. 20-20118, 2023 WL 4248859, at *6 (D.N.J. June 29, 2023) (citing *Di Maggio v. O'Brien*, 497 F. Supp. 870, 875-76 (E.D. Pa. 1980)) ("[T]he *Monell* analysis that liability under [§] 1983 cannot be predicated on *respondeat superior* applies with equal force to [§] 1985.").

Liability under respondeat superior can be shown in one of two ways. First, "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," which "must be made with appropriate particularity." *Rode*, 845 F.2d at 1207; *see also Boykins v. Ambridge Area School District,* 621 F.2d 75, 80 (3d Cir.1980) (finding a theory of liability under respondeat superior principles to be "adequate" where it states the time, place, and persons responsible). Second, individual defendants who are policymakers may be liable if it is shown that such defendants, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989).

Here, Plaintiff seeks to impose individual supervisory liability on Defendants Platkin and Rabner based on their positions as "supervisors" of the numerous judges named as Defendants in this lawsuit. However, it is well established that a director or supervisor cannot be held liable for the conduct of his or her employees. *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005) (affirming dismissal of a plaintiff's complaint that "hypothesize[d] that [an Attorney General] may

28

have been somehow involved simply because of his position as the head of the Office of the Attorney General."); *see also Zigler v. Warren*, Civ. No. 21-19474, 2022 WL 903383, at \*2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). A supervisory title does not transform an individual into a stand-in defendant for every action taken by others in their office. Without specific allegations that Defendants Platkin and Rabner personally participated in, directed or allowed unconstitutional conduct to occur, Plaintiff's claim cannot stand. *Rodriguez Fuentes v. Sch. Dist. of City of Philadelphia*, Civ. No. 17-3736, 2019 WL 1505861, at \*7 (E.D. Pa. Apr. 4, 2019) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993)) ("The mere fact, without more, that a defendant holds a supervisory position is insufficient to prove a cause of action because § 1983 does not support civil rights claims based upon a theory of respondeat superior.").

Plaintiff further fails to plausibly allege any personal involvement of Defendants Platkin and Rabner in an alleged "scheme" with the remaining Judicial Defendants to deprive or conspire to deprive Plaintiff of his constitutional rights. Other than passively identifying this "scheme" as a "policy, practice, and custom of separating children from their parents without providing them with an adequate hearing," (ECF No. 35 ¶ 89), Plaintiff fails to allege that Defendants Platkin and Rabner established or maintained this "scheme" with deliberate indifference to the consequences of Plaintiff. He also fails to identify a directive, rule, or institutional decision attributable to Defendants Platkin and Rabner. Section 1983 requires far more than pointing to a supervisor and assuming responsibility flows upward. *See Zigler*, 2022 WL 903383, at \*2. By focusing only on their position and not on any policy they created or implemented, Plaintiff attempts to manufacture liability where none exists.

29

Given that the Amended Complaint fails to identify any personal involvement, policy or practice attributable to Defendants Platkin and Rabner, there is simply no legal basis on which Plaintiff's supervisory § 1983 claim can rest.  Thus, the Court dismisses Plaintiff's § 1983 claims against Defendants Platkin and Rabner in their individual capacities.

#### b.    Absolute Judicial Immunity

The Judicial Defendants argue that all claims brought against them in their individual capacities are barred by absolute judicial immunity.  (ECF No. 48-1 at 19-23.)  "As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity."  *Alfred v. New Jersey*, Civ. No. 13-0332, 2013 WL 4675536, at *7 (D.N.J. Aug. 29, 2013) (citing *Howell v. Young*, 530 F. App'x 98, 100 (3d Cir. 2013)).  There are two circumstances in which judicial immunity does not apply: "'(1) a judge is not immune from liability for nonjudicial actions, and (2) a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"  *Timm v. New Jersey*, Civ. No. 18-9769, 2022 WL 1291525, at *4 (D.N.J. Apr. 29, 2022) (citing *Kaul*, 372 F. Supp. 3d 206, 246 (D.N.J. 2019)).

"In determining whether an act qualifies as a 'judicial act,' courts look to 'the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'"  *Savage v. Camden Cnty. Corr. Facility*, Civ. No. 16-08199, 2017 WL 1502789, at *6 (D.N.J. Apr. 26, 2017) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."  *Stump*, 435 U.S. at 356; *see also Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000) ("[O]ur analysis must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision.")  "Allegations that

actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity." *Timm*, 2022 WL 1291525, at *4 (internal quotations omitted); *see also Gallas*, 211 F.3d at 769 ("Immunity will not be forfeited because a judge has committed grave procedural errors, or because a judge has conducted a proceeding in an informal and *ex parte* manner.  Further, immunity will not be lost merely because the judge's action is unfair or controversial.") (cleaned up).

Unlike judicial acts, however, judges are not entitled to judicial immunity for administrative or ministerial acts. *Welch v. United States*, Civ. No. 21-10866, 2021 WL 4772110, at *3 (D.N.J. Oct. 13, 2021) (quoting *Gallas*, 211 F.3d at 769-770); *Montana v. Connor*, 817 F. Supp. 2d 440, 446 (D.N.J. 2011).  "Ministerial" acts are the "antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment." *In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997); *In re Toppin*, 645 B.R. 773, 785-86 (E.D. Pa. 2022) ("Ministerial acts are those that are simple, routine, clerical, or automatic but 'exclude[ actions] involving deliberation, discretion, or judicial involvement.'" (quoting *In re Soares*, 107 F.3d at 974)).

Judicial immunity also does not apply where there is a "clear absence of all jurisdiction," or to "acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Gallas*, 211 F.3d at 769 (quoting *Stump*, 435 U.S. at 356 n.6).  "Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority . . . .  But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.")).  To that end, "a

judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court." *Gallas*, 211 F.3d at 771.

Here, considering Plaintiff's constitutional claims as set forth in Counts One and Three of his Amended Complaint, the Judicial Defendants are entitled to absolute immunity because Plaintiff's civil rights claims arise out of "judicial acts." *See, e.g.*, *Reardon v. New Jersey*, Civ. No. 13-5363, 2014 WL 2921030, at *5 (D.N.J. June 27, 2014) ("Plaintiff's claims against the State court judges all arise from their judicial actions and, therefore, the State court judges are entitled to absolute judicial immunity."); *see also Savadjian v. Caride*, Civ. No. 18-16381, 2019 WL 6975102, at *2 (D.N.J. Dec. 20, 2019) ("It is well settled that judges have absolute immunity from claims for damages arising out of the performance of their judicial duties."). Plaintiff's claims against the Judicial Defendants stem from orders and other rulings issued during family court proceedings involving Plaintiff and his ex-wife D. Posner. (ECF No. 35 ¶¶ 32-39, 42-53, 55-58, 60-64, 66-70, 72-73.)

Apart from conclusory allegations regarding the non-judicial nature of Judicial Defendants' actions (*see id*. ¶¶ 5, 46, 49-50, 73, 289-301, 303-304, 306; *see also id*. at 2-4, 10, 15, 18), Plaintiff's allegations, taken as true, are best summarized as challenging the fairness of and motivations behind various rulings issued in Plaintiff's family court proceedings. Such allegations, which "amount to attacks on court decisions," cannot overcome judicial immunity. *Eng. v. Kaplan*, Civ. No. 18-01617, 2023 WL 1360864, at *6 (D.N.J. Jan. 31, 2023) (finding that the plaintiff's allegation that the judges' "erroneous" rulings were based on false statements was insufficient to "pierce judicial immunity"); *City of Philadelphia v. Bradley*, Civ. No. 24-6054, 2024 WL 5109415, at *3 (E.D. Pa. Dec. 13, 2024) (noting that the claim that three federal judges made "false statements . . . in connection with memoranda and orders entered in [the plaintiff's]

32

previous federal cases and appeals" was "meritless on absolute judicial immunity grounds"); *see also Gallas*, 211 F.3d at 769 (noting that "immunity will not be lost merely because the judge's action is "unfair"); *Timm*, 2022 WL 1291525, at \*4 (finding that a different judge handling plaintiff's matter was not an action "taken in the complete absence of all jurisdiction" where the judge was otherwise authorized to adjudicate such cases).

Plaintiff also unsuccessfully alleges that Judge Mullen and Judge Walsh's acts were "ministerial/administrative," such as 1) not providing Plaintiff with transcripts, including of child interviews; 2) not issuing findings of fact and law; 3) not allowing Plaintiff to obtain court-appointed expert reports; 4) not allowing Plaintiff to provide questions for child interviews; 5) not permitting oral argument; 6) not granting Plaintiff access to his children's "medical and school records and reports;" 7) enforcing court orders; 8) failing to timely hear Plaintiff's Order to Show Causes; 9) refusing to enforce court rules; 10) failing to follow appellate rulings; and 11) failing to investigate ethical violations.  (*See generally* ECF No. 35 at 4-5, 9-10, 24-25.)   The aforementioned acts unquestionably qualify as "judicial acts" subject to absolute judicial immunity.  *See Savage*, 2017 WL 1502789, at \*6.  Even if Plaintiff alleges that the actions of the Judicial Defendants were malicious and improper, "[a]llegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity." *Timm*, 2022 WL 1291525, at \*4 (internal quotations omitted).

Accordingly, since Plaintiff's §§ 1983 and 1985 allegations against the Judicial Defendants consist entirely of his dissatisfaction over the outcome of various judicial proceedings, including judicial acts committed during their pendency, the Court finds that Plaintiff's claims against the Judicial Defendants must be dismissed with prejudice as barred entirely by absolute judicial immunity.

### 6. Statute of Limitations

The Court now addresses the Bedminster Defendants' statute of limitations arguments with respect to Plaintiff's civil rights claims. Because this Court finds that Plaintiff's § 1983 and § 1985 claims began to accrue on October 30, 2018, otherwise known as the date Plaintiff's parental rights were temporarily suspended, his claims against the Bedminster Defendants are dismissed with prejudice.

"The length of the statute of limitations for a § 1983 and § 1985 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). In New Jersey, "[t]here is a two-year statute of limitations for claims brought under § 1983." *Sears v. Dellavelle*, Civ. No. 21-18739, 2022 WL 951367, at *3 (D.N.J. Mar. 30, 2022) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006)). Similarly, § 1985 claims also have a two-year statute of limitations. *Freeman v. Schaffer*, Civ. No. 18-11566, 2019 WL 2367083, at *3 (D.N.J. June 5, 2019). However, federal law governs when a claim begins to accrue, and "[i]t is axiomatic that . . . 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the [] action.'" *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991)).

Plaintiff's civil rights claims, at least as pled with respect to the Bedminster Defendants, can be traced back to a single event: the October 30, 2018 Order signed by Judge Mullen temporarily suspending Plaintiff's visitation and contact with his children. D. Posner, along with the Attorney Defendants, allegedly set these constitutional deprivations into motion upon the filing of her Order to Show Cause in state family court, (*see* ECF No. 35 ¶ 27; *see also id.* at 14), a decision encouraged by the meeting Plaintiff's daughter had with a Bedminster school counselor, in which the school allegedly violated Plaintiff's parental rights by refusing to inform him about

34

his daughter's risk of harm to herself. (*Id.* at ¶ 27.) While Plaintiff's claims against the Bedminster Defendants are sparse, there is no question that Plaintiff "knew or should have known" that his constitutional and parental rights were allegedly violated at the time the state court entered an order temporarily suspending those rights on October 30, 2018. *Montgomery*, 159 F.3d 120 at 126.

The Court need not address Plaintiff's "continuing violation" arguments, which are aimed at trying to further toll the applicable statute of limitations based on his subsequent state court filings. (ECF Nos. 56 at 12, 58 at 8); *see also Hunt v. Pa. Dep't. of Corrections*, 289 F. App'x 507, 509 (3d Cir. 2008) (noting that "neither this Court nor the Supreme Court has ever applied the continuing violation doctrine outside of the employment discrimination context"). Where October 30, 2018 represents the initial act that put Plaintiff on notice of his constitutional deprivations, further attempts for the next eight years cannot place Plaintiff's Amended Complaint into the applicable statute of limitations. *See Andrews v. Borough of Collingdale*, 329 F. App'x 373, 376 (3d Cir. 2009) (per curiam) (continuing violation doctrine did not save time-barred claims where "(t)he mere fact that (appellants) continued to be affected by the repercussions of these initial acts does not render their claims regarding these earlier actions timely"); *see also Gould v. Borough*, 615 F. App'x 112, 117 (3d Cir. 2015) (state court litigation did not delay accrual date of claims because "adverse appellate decisions do not reflect 'continual unlawful acts' by defendants but rather 'continual ill effects' of their alleged misconduct.").

On this basis, Plaintiff's civil rights claims as alleged in Counts One and Three of his Amended Complaint with respect to the Bedminster Defendants (in their official and individual capacities are dismissed. Since the applicable statute of limitations period has passed for these claims, the Court finds that any further amendment would be futile and dismisses these claims with prejudice.

### 7. Failure to State a Claim

In order for a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *See Wilson*, 57 F.4th at 140. Although "[a] complaint need only contain allegations to give 'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Carpenters Health v. Mgmt. Res. Sys.*, 837 F.3d 378, 384 (3d Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). These requirements derive from Rule 8, which require "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)), and allegations that are "simple, concise, and direct" (Fed. R. Civ. P. 8(d)(1)). Importantly, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

A liberal review of Plaintiff's Amended Complaint reveals only minor passing references to the Bernardsville Defendants, which are unquestionably speculative. (*See* ECF No. 35 at 17.) Plaintiff's only allegation against the Bernardsville Defendants is that they deprived Plaintiff of his constitutional rights by "refusing to allow him to participate in the educational decisions of his children, ignor[ing] state law and refus[ing] to produce educational records of the children." Plaintiff's Amended Complaint, in its current form, does not provide fair notice to the Bernardsville Defendants of the alleged constitutional violations. Therefore, Counts One and Three of Plaintiff's Amended Complaint are dismissed without prejudice as to the Bernardsville Defendants.

### B. Count Two

Count Two of Plaintiff's Amended Complaint alleges a violation of his Fifth Amendment due process rights pursuant to § 1983. This claim fails as a matter of law. It is well-established that the Fifth Amendment's due process clause applies only to federal actors, not state actors. *See*

*Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005) ("In a due process claim brought under the Fifth Amendment, the 'State' in the state action analysis is the federal government."); *see also Myers v. County of Somerset*, 515 F. Supp. 2d 492, 504 (D.N.J. 2007) (dismissing Fifth Amendment due process claims against state officials); *Frances v. Ciarrocca*, Civ. No. 24-00736, 2024 WL 4785017, at *8-*9 (D.N.J. Nov. 14, 2024) (dismissing Fifth Amendment due process claims, with prejudice, where defendants were state actors).

Plaintiff only names state actors and private individuals in his Amended Complaint. Given that Count Two of Plaintiff's Amended Complaint fails as a matter of law, the Court finds that any further amendment would be futile and dismisses Count Two as against all Defendants with prejudice. *See also Olsen v. Citi Bank Legal Dep't*, 2015 WL 7258861, at *3 (D.N.J. Nov. 17, 2015) (dismissing *pro se* complaint with prejudice where amendment was futile); *see also Graddy v. Deutsche Bank Tr. Co. Americas as Tr.*, 2012 WL 762246, at *6 (D.N.J. Mar. 6, 2012) (finding that any amendment would be futile since Plaintiffs' claims fail as a matter of law).

### C. Count Four

Plaintiff alleges that the Defendants conspired to defraud him of his "civil rights, money, [and] assets," as well as cause him personal injury, in violation of RICO. (*Id.* at 13-18, ¶¶ 132-34.)

Plaintiff's RICO claims seek to redress injuries caused by numerous state court judgments, which is barred by the *Rooker–Feldman* doctrine. Therefore, the Court lacks subject matter jurisdiction to hear them. *See Parness*, 2017 WL 6513346, at *6 (finding Plaintiff's RICO claims barred by the *Rooker-Feldman* doctrine where Plaintiff sought to use RICO "as a means to undo the state court judgments against him which had been litigated extensively in the state courts prior to the filing of this matter, with the actual judgment against Petitioner having apparently been litigated through all of the state courts to completion several years ago," and where "Plaintiff

37

decries the judgments against him as a denial of due process and seeks to have those judgments declared void as a result"); *see also Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream,* 317 Fed. App'x. 263, 264, 266 (3d Cir. 2009) (finding a plaintiff's RICO claims "precisely the kind of action that the *Rooker–Feldman* doctrine is designed to preclude' where plaintiff "lost at every level of the New York state courts" and his complaint "[sought] redress solely for 'injuries' caused by those state court judgments").

Accordingly, this Court dismisses Plaintiff's RICO claims against all Defendants without prejudice. *See Talley v. United States*, Civ. No. 11-1180, 2014 WL 282680 at *3 (D.N.J. Jan. 24, 2014) ("If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice.").

### D.  Plaintiff's ADA claims (Count Twenty-Six)

Plaintiff argues that Judges Walsh and Mullen refused to process his requests for reasonable accommodations and engaged in discriminatory processes against him, "including but not limited to a failure to provide reasonable accommodations, denial of services, unequal treatment, inaccessible facilities, etc." and experienced "loss of access." (ECF No. 35 at ¶¶ 309-11.)  Plaintiff argues that these actions were in violation of Titles II and III of the ADA. (*Id.* ¶ 312.)  Plaintiff seeks relief in the form of a declaration stating that Defendants violated the ADA and requiring Defendants to comply with the ADA by providing reasonable accommodations. (*Id.* ¶ 314.)  He also seeks compensatory and/or punitive damages, and reasonable attorneys' fees and costs. (*Id.*)

"To bring a claim under the ADA, a plaintiff 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 117 F.4th 503, 527 (3d Cir. 2024), *cert. denied sub nom. Wetzel v. Williams*, 146 S. Ct. 91 (2025)

(quoting *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018)).  A plaintiff must plausibly plead that they have a "disability" to establish a claim under the ADA.  *Leone v. N. Jersey Orthopaedic Specialists, P.A.*, Civ. No. 11-3957, 2012 WL 1535198, at *3 (D.N.J. Apr. 27, 2012) (quoting *Marinelli v. City of Erie, Pa.,* 216 F.3d 354, 359 (3d Cir.2000)).  Pursuant to 42 U.S.C. § 12102(1), a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  *Leone*, 2012 WL 1535198, at *3 (quoting 42 U.S.C. § 12102(1)(A)).  For Rule 12(b)(6) purposes, Plaintiff must plead the following three elements: "(1) that Plaintiff suffers from a 'physical or mental impairment'; (2) that the impairment limits an activity that constitutes a 'major life activity' under the ADA; and (3) the limitation is 'substantial.'"  *Id.* (quoting 42 U.S.C. § 12102(1)(A)).

The Third Circuit has held that there is no individual liability under Titles II and III of the ADA. *See Dalton v. Saint Barnabas Med. Ctr.*, Civ. No. 21-05354, 2025 WL 2808156, at *9 (D.N.J. Sept. 30, 2025) (citing *Matthews v. Pa. Dep't. of Corr.*, 613 F. App'x. 163, 169–70 (3d Cir. 2015)) (affirming the dismissal of Title II claims against defendants because they were not public entities); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (dismissing a plaintiff's Title II claim under the ADA where the plaintiff "sued state employees in their individual capacities, not any 'public entity' as the statute requires."); *see also DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 589 (D.N.J. 2015) (citing *Emerson v. Thiel College*, 296 F.3d 184, 188 (3d Cir. 2002)) ("With respect to the ADA, the Third Circuit has held that individual defendants are not liable for violations of Title III, which prohibits discrimination in places of public accommodation."). Accordingly, Plaintiff's Title II and Title III ADA claims against

Defendants Mullen and Walsh, insofar as they are raised against these Defendants in their individual capacities, are dismissed with prejudice.

### 1. Title II of the ADA

To successfully assert a claim under Title II of the ADA, a plaintiff must demonstrate that "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Matthews v. Pennsylvania Dep't of Corr.*, 827 F. App'x 184, 187 (3d Cir. 2020) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). Relevant here, Title II of the ADA specifically abrogates sovereign immunity. *Kennedy v. New Jersey Ct. Sys.*, No. 24-2826, 2026 WL 323878, at *3 (3d Cir. Feb. 6, 2026) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)); *see also id.* (citing *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004)) (recognizing that Title II applies to cases implicating the right of access to the courts).

When a plaintiff seeks compensatory damages under Title II of the ADA, as Plaintiff does here, he must also prove "intentional discrimination." *Matthews,* 827 F. App'x at 187 (citing *Haberle*, 885 F.3d at 181). "'To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference,' which requires both '(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" *Matthews*, 827 F. App'x at 187 (quoting *Haberle*, 885 F.3d at 181). A plaintiff may demonstrate that a right was "substantially likely to be violated" by either "(1) alleging 'a failure to adequately respond to a pattern of past occurrences of injuries like [his]'; or (2) alleging facts that 'prove that the risk of . . . cognizable harm was so great and so obvious that the risk and the failure . . . to respond will alone support finding deliberate indifference.'" *Matthews*, 827 F. App'x at 187 (quoting *Haberle*, 885 F.3d at 181).

Plaintiff fails to state a claim under Title II of the ADA. Plaintiff's vague references to having "multiple documented mental disabilities" and assertions that he "is entitled to protections under the ADA" do not meet the threshold to demonstrate that he is a qualified individual with a disability. *Baratta v. Cnty. of Ocean*, Civ. No. 10-362, 2010 WL 4853670, at *7 n.2 (D.N.J. Nov. 22, 2010) (dismissing a plaintiff's ADA claims where the plaintiff did "not identify or describe the disability that would qualify him for protection under the Americans with Disabilities Act."). This alone is fatal to Plaintiff's claim. However, the Court also notes that aside from wholly conclusory statements that Judges Mullen and Walsh failed to provide Plaintiff with unspecified accommodations and services, Plaintiff fails to allege that he was denied such assistance on the basis of his disability, which is required to state a claim under Title II of the ADA. *See Kennedy*, 2026 WL 323878 at *3 (dismissing a Title II ADA claim against the New Jersey Court System where the plaintiff failed to allege that she was denied assistance on the basis of her disability). Nor is Plaintiff's conclusory allegation that Judges Mullen and Walsh "engaged in discriminatory practices against Plaintiff sufficient to demonstrate intentional discrimination. *See Matthews*, 827 F. App'x at 187 (quoting *Haberle*, 885 F.3d at 181). Accordingly, Plaintiff's Title II ADA claim as against Judges Mullen and Walsh in their official capacities is dismissed without prejudice.

### 2. Title III of the ADA

Title III of the ADA provides "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III of the ADA, a plaintiff must demonstrate that, "1) he is disabled, (2) the complained-of venue is a 'public accommodation' under Title III of the ADA, and (3) the venue unlawfully discriminated against the plaintiff on the basis of his disability by failing to make

a reasonable modification that was necessary to accommodate his disability." *Herrera v. Nike, Inc.*, Civ. No. 23-02947, 2024 WL 3159295, at *2 (D.N.J. June 25, 2024) (citing *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019)).

Title III of the ADA applies to public accommodations and services operated by private entities. *Wolf v. New Jersey*, Civ. No. 19-16979, 2023 WL 2367991 at *6 (D.N.J. Mar. 6, 2023), *aff'd*, No. 23-1635, 2024 WL 5154023 (3d Cir. Dec. 18, 2024). Title III governs twelve specified categories of "public accommodation," none of which "include courthouses or the state court system." *Id.* (citing 42 U.S.C. § 12181(7) (identifying places of "public accommodation" as including, but not limited to, hotels, restaurants, movie theaters, auditoriums, grocery stores, laundromats, museums, zoos, and daycare facilities)). By contrast, "'[s]tate courthouses and the state court system . . . are by definition, excluded as places of "public accommodations" under Title III.'" *Alintoff v. New Jersey*, Civ. No. 23-02671, 2025 WL 1942424, at *3 (D.N.J. July 15, 2025) (quoting *Wolf,* 2023 WL 2367991, at *6). "Indeed, the language of § 12181(6) excludes 'public entit[ies]' from the definition of 'private entities' considered 'public accommodations.'" *Wolf*, 2023 WL 2367991, at *6; *see also* 42 U.S.C.A. § 12131(1) (defining a "public entity," in relevant part," as "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or States or local government.").

Although the court finds that Plaintiff has failed to establish that he is disabled or has a disability under the ADA, the Court also dismisses with prejudice Plaintiff's claim under Title III of the ADA as against Judges Mullen and Walsh since the State of New Jersey,[24] the state courthouses and the state court system are excluded as places of "public accommodation." *See*

---

[24]   *See Dongon*, 363 Fed. App'x 153, 156 (3d Cir. 2010) (noting that the state court, its employees, and judges are considered 'arms' of the state).

*Wolf*, 2023 WL 2367991, at *6 (dismissing plaintiffs' Title III ADA claim with prejudice where plaintiffs alleged "that they were denied appropriate accommodations during state court proceedings."); *see also Alintoff*, 2025 WL 1942424, at *3 (dismissing a plaintiff's Title III ADA claim against all defendants—which included several NJ state court judges—where plaintiff's claims were "based upon defendants' conduct limiting her equal access to court proceedings, programs, and activities.").

### E. Supplemental Jurisdiction

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Obuskovic v. Wood*, 761 F. App'x 144, 148-49 (3d Cir. 2019) (the court "has discretion to 'decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction'" (quoting 28 U.S.C. § 1367(c)(3))). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Francisco v. New Jersey Dep't of Correction*, Civ. No. 23-22775, 2024 WL 4117394, at *2 (D.N.J. Sept. 9, 2024) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original)). Further, "a court does not err if it declines to exercise supplemental jurisdiction over state claims after it dismisses a federal claim on which its jurisdiction is based in the absence of extraordinary circumstances. *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) (citing *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 751 (3d Cir. 2004).

The Court finds no extraordinary circumstances exist to warrant an exercise of supplemental jurisdiction over Plaintiff's remaining state law claims. Plaintiff's state law claims are hereby dismissed, without prejudice.

43

## IV.  CONCLUSION

For the reasons set forth above, and other good cause shown, Defendants' Motions to Dismiss (ECF Nos. 45, 47, 48, 49, 51, 52, 61) are **GRANTED** in part and **DENIED** in part.

An appropriate Order follows.

Dated: March 10, 2026

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

44